IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| DEERE & COMPANY, | ) Civil Action No. 09 CV 00095 |
| Plaintiff/Counter-Defendant, | ) The Honorable Charles R. Wolle |
| v. | ) Magistrate Judge Celeste F. Bremer |
| BUSH HOG, LLC and GREAT PLAINS MANUFACTURING INCORPORATED, | ) SUPPLEMENTAL DECLARATION OF DR. RICHARD L. PARISH |
| Defendants/Counter-Plaintiffs. | ) |

## SUPPLEMENTAL DECLARATION OF DR. RICHARD L. PARISH

I, DR. RICHARD L. PARISH, hereby declare under penalty of perjury under the laws of the United States of America, that the following is true and correct:

1. I have been asked to provide my opinions in response to Defendants' initial claim construction briefs. My qualifications are set forth in my July 27, 2010 Declaration and my curriculum vitae attached thereto as Appendix A.

2. In preparation for this Declaration, I have relied on my agricultural industry experience and studied the following items in addition to those relied upon for my July 27, 2010 Declaration:

    A. Bush Hog's Initial Claim Construction Memorandum and Exhibits thereto;

    B. Great Plains' Initial Claim Construction Memorandum and Exhibits thereto; and

    C. Great Plains' Expert, Mr. Fred Smith's Declaration In Support of Great Plains' Initial Claim Construction Memorandum.

I.   Opinions Regarding Defendants' Claim Interpretations

3.   It is my opinion that the patents included in Mr. Smith's declaration do not contradict Deere's construction of the claim term "rotary cutter." I agree that both U.S. Patent Numbers 6,138,444 and 4,445,312 are "rotary cutters." (Mr. Smith's Decl., ¶ 7.) Both of these patents describe either being pulled behind or mounted to, and powered by a tractor. (*Id.*; '312 Patent, Col. 2, ll. 48-50.) U.S. Patent Numbers 6,698,172 and 5,946,893 merely use the term "Cutter deck" and are therefore irrelevant. The remaining patents referenced in Mr. Smith's declaration simply use the word "rotary" or "rotatable" to describe the general operation of the blade and are not describing the type of machine. (*E.g.* 5,561,972 Patent, Col. 3, ll. 32-34 ("SUMMARY OF THE INVENTION: A blade assembly according to the present invention includes: ..."); 4,986,062 Patent, Col. 6, ll. 11-12 ("In a mower having a rotary cutter element within a mowing housing...")).

4.   It is my opinion that Great Plains' expert, Mr. Smith, is not a person of ordinary skill in the art as I have described such a person in my previous declaration. (Parish Decl. ¶ 10.) Neither Mr. Smith's declaration nor his curriculum vitae (Appendix P) set forth any experience with rotary cutters. I believe this may be why Mr. Smith's opinions do not align with the industry's definition of "rotary cutters." Therefore, I do not find Mr. Smith's opinions as to what a person of ordinary skill in the art would understand authoritative.

5.   It is my opinion that Deere's construction of the claim phrase, "having torsional stiffness" as "providing high resistance to twisting" is correct, as I stated in my previous Declaration. (Parish Decl. ¶¶ 43-49.) I believe that a person of ordinary skill in the art would understand that "high" as used in Deere's construction, is a word of degree that differentiates those rotary cutters only using a single deck wall to provide strength.

6. Similarly, I believe that a person of ordinary skill in the art would understand that "high" as used in Deere's construction of "deck wall" is another term of degree. It is my opinion that mechanical components mounted on a deck wall, such as gear boxes and wheel linkages, exert high forces. It is also my opinion that objects thrown by blades of a rotary cutter may cause high impact. It is therefore important that a rotary cutter deck wall be capable of supporting such mechanical components and withstanding such impacts.

7. I do not believe that a person of ordinary skill in the art would agree that the lower deck wall of Bowie et al. is "substantially planar" as that term is used in the '980 patent. I disagree with Great Plains' statement that a "majority" of Bowie et al.'s lower deck wall is a "substantially planar." The lower deck wall of Bowie et al. shows at least a dozen different planes, which create pockets. These types of pockets allow wet material to accumulate and would eventually lead to rusting. I believe the elimination of pockets, and thus rusting, is an issue the '980 patent is specifically trying to solve and Bowie et al.'s lower deck wall defeats this purpose.

8. I believe that a person of ordinary skill in the art would understand what was meant by the term "easily" as used in the '980 patent and therefore, need not be further construed as I stated in my previous Declaration. I have personally used (and cleaned) several Deere rotary cutters using the dual wall deck based on the '980 patent as well as many other rotary cutters of conventional design, and I can attest to the obvious ease of cleaning of the Deere rotary cutters relative to the conventional cutters.

9. It is my opinion that the '980 patent provides specific examples of what is meant by the term "easily" should further guidance be necessary. For example, the '980 specification states that "it is known to provide decks which have a relatively smooth upper surface that can be

cleaned of debris quite easily." ( '980 Pat., Col. 1, ll. 29-35.) The '980 specification also describes what is not meant by "easily:" "With current style decks, the structural components such as outboard stringers, gearbox saddles, plates and gussets make it difficult to clean the deck and create traps for material and/or water to accumulate." ( '980 Pat., Col. 1, ll. 25-29.) I believe that Claim 6 is referring to these examples when it states "an upwardly facing deck structure which is <u>smooth</u> and substantially <u>obstruction free</u> from front to back, whereby material may slide or easily be washed off said deck surface."

10.    I also agree with Mr. Friesen's deposition testimony when he stated that whether a rotary cutter deck is "easy to clean" is merely a matter of visual inspection. (Deere's Exhibit 2, 160:6-10.) A person of ordinary skill in the art that has actually used rotary cutters would be able to determine by visual inspection whether a particular rotary cutter would be "easy to clean." For example, if a particular rotary cutter had many obstructions or pockets on the upper deck wall, a person of ordinary skill in the art would recognize that it would not be "easy to clean." However, if a particular rotary cutter had a smooth, curved upper deck wall, a person of ordinary skill in the art would recognize that it would be "easy to clean."

11.    To the best of my knowledge, the foregoing is true and accurate. It is my understanding that discovery in this matter has not been completed. I, therefore, reserve the right to supplement this Supplemental Declaration as additional information becomes available.

Executed this 23 August 2010 at Amite, Louisiana.

_____
Dr. Richard L. Parish